**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

BRICKLAYERS & TROWEL TRADES
INTERNATIONAL PENSION FUND,

*Plaintiff,*

v.

WEST RIVER MASONRY, INC.,

*Defendant*.

No. 25-cv-1054 (DLF)

**MEMORANDUM OPINION**

Bricklayers & Trowel Trades International Pension Fund (IPF) brings this action against West River Masonry, Inc. (West River), to recover withdrawal liability, liquidated damages, attorney's fees and costs, and interest accrued under their contractual agreements and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*  Before the Court is IPF's Motion for Default Judgment.  Mot. Default J., Dkt. 8.  For the reasons that follow, the Court will grant the motion.

I.    **BACKGROUND**

IPF is a multiemployer employee pension benefit plan organized under ERISA.  Compl. ¶ 1, Dkt. 1; *see* 29 U.S.C. § 1002(37).  IPF provides retirement and employee benefits to individuals working in the construction industry.  Decl. Lester Kauffman ¶ 2, Dkt. 8-3.  West River is a South Dakota corporation that contracts in the masonry and concrete industry.  Compl. ¶ 2.  Under a collective bargaining agreement and ERISA, West River is required to make contributions to IPF based on the number of hours worked by its employees in covered employment.  *Id.* ¶¶ 5, 6; Decl. Lester Kauffman ¶¶ 3, 4.  IPF alleges that West River withdrew from the benefits plan,

was subject to a withdrawal liability due to continued work covered by the collective bargaining agreement, and failed to pay its liability in full.  Compl. ¶¶ 7–9.

Specifically, IPF alleges that West River withdrew from the benefits plan at the end of 2023.  *Id.* ¶ 8.  On December 7, 2023, IPF notified West River that its withdrawal obligated it to pay a withdrawal liability amounting to $867,846.  Compl. ¶ 11; *see* 29 U.S.C. § 1381(a).  IPF provided West River with a payment schedule for the withdrawal liability, but West River missed its payments scheduled for February 16, 2024, and April 16, 2024.  Compl. ¶¶ 13–14.  On May 8, 2024, IPF informed West River that it was in default on its withdrawal liability.  *Id.* ¶ 14.  West River later made several payments in 2024 and 2025, *id.* ¶¶ 15–16, but remained delinquent on six of its past-due payments, *id.* ¶¶ 17–18.  Accordingly, IPF sought a judgment against West River of $842,544.29 in withdrawal liability, interest on that amount calculated at 15% per annum since February 6, 2024, $168,508.86 in liquidated damages, and attorney's fees and costs.  *Id.* at 7–8.

IPF filed the complaint in this action on April 8, 2025, *id.* at 8, and effected service on West River on April 16, 2025, Aff. Service, Dkt. 4; Proof Service, Dkt. 4-2.  After West River did not answer or otherwise respond to the complaint within the time allotted by Federal Rule of Civil Procedure 12, IPF requested an entry of default.  Dkt. 5.  IPF mailed a copy of this request to West River.  Dkt. 5-2.  The Clerk of the Court entered default on May 13, 2025, Dkt. 6, and IPF served a copy of the default entry on West River on the same day, Dkt. 7.  Thereafter, IPF moved the Court to enter a default judgment against West River under Rule 55(b)(2) of the Federal Rules of Civil Procedure.  Mot. Default J. 1.  IPF requests entry of a judgment of (1) $839,312.39 for West River's unpaid balance of the withdrawal liability; (2) interest on that balance assessed at a rate of 15% per annum since March 5, 2025; (3) $167,862.48 in liquidated damages; and (4) attorney's fees of $11,882 and costs of $753.  *Id.* 1–2.

2

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure empower a federal district court to enter a default judgment against a defendant who fails to defend its case.  Fed. R. Civ. P. 55(b)(2); *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980).  While federal policy generally favors resolving disputes on their merits, default judgments are appropriate "when the adversary process has been halted because of an essentially unresponsive party."  *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (citation modified).

Obtaining a default judgment is a two-step process.  First, the plaintiff must request that the Clerk of Court enter a default judgment against a party who has "failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  The Clerk's default entry alone establishes the defaulting defendant's liability for the well-pleaded allegations of the complaint.  *See Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 35 (D.D.C. 2014); *see also*, *e.g.*, *SEIU Nat'l Indus. Pension Fund v. ABC Window Cleaning Co.*, 278 F. Supp. 3d 455, 458 (D.D.C. 2017) ("The Clerk of Court has already entered defendant's default, so the factual allegations in the complaint are therefore taken as true.").  Second, if the plaintiff's claim is not for a "sum certain," the plaintiff must apply to the court for a default judgment.  Fed. R. Civ. P. 55(b).  At that point, the plaintiff "must prove his entitlement to the relief requested using detailed affidavits or documentary evidence on which the court may rely."  *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 103 (D.D.C. 2015) (citation modified).

When ruling on a motion for default judgment, the Court "is required to make an independent determination of the sum to be awarded."  *Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009) (citation modified).  The Court has "considerable latitude" in making that inquiry.  *Ventura*, 134 F. Supp. 3d at 103 (citation modified).  The Court may conduct

a hearing to determine damages, Fed. R. Civ. P. 55(b)(2), but the Court is not required to do so "as long as it ensures that there is a basis for the damages specified in the default judgment," *Ventura*, 134 F. Supp. 3d at 103 (citation modified).

## III.    ANALYSIS

The Court has personal jurisdiction over West River and venue is proper.  ERISA's venue provision provides that venue is proper "in the district where the plan is administered."  29 U.S.C. § 1132(e)(2).  IPF is administered in Washington, D.C.  Compl. ¶ 4.  Moreover, "ERISA's venue provision has been interpreted to authorize nationwide service of process."  *Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Liberty House Nursing Home of Jersey City, Inc.*, 232 F. Supp. 3d 69, 75 (D.D.C. 2017) (citation modified).  And "[u]nder a nationwide service of process provision, minimum contacts with the United States suffice to create personal jurisdiction."  *Id.* (citation modified).  Here, West River's existence as a South Dakota corporation carrying out construction activity in South Dakota, *see* Compl. ¶¶ 1, 5, 8, establishes minimum contacts with the United States.  Because the Court has jurisdiction and the Clerk entered default in this case, West River is liable for the well-pleaded allegations in the complaint.  *See Boland*, 304 F.R.D. at 35.

IPF's claim that West River did not pay its outstanding withdrawal liability is well-pleaded. IPF alleges that its collective bargaining agreement with West River and ERISA made clear the obligation West River owed to IPF when it withdrew from the benefit plan: payment of a withdrawal liability.  *See* Compl. ¶¶ 5–9; 29 U.S.C. § 1383(a)–(b).  A corporation "withdraws" when it ceases to have an obligation under the plan and continues to perform work in the jurisdiction covered by the collective bargaining agreement.  29 U.S.C. § 1383(b).  IPF alleges (1) that West River withdrew from the plan as of December 31, 2023, Compl ¶ 8, (2) that West River continued to perform work in the jurisdiction for which it was previously obligated to make

4

contributions under the collective bargaining agreement, *id.*, and (3) that West River was delinquent on payments of its withdrawal liability, Compl. ¶¶ 13–18.  IPF therefore sufficiently pleaded a claim that it was owed the outstanding withdrawal liability from West River under ERISA, 29 U.S.C. § 1399(c)(5), and that West River did not pay said withdrawal liability.  West River is accordingly deemed liable for IPF's claim.

With liability established, the Court must independently determine the amount owed by West River to IPF.  *Fanning*, 257 F.R.D. at 7.  West River's obligations are set forth in a number of agreements and contracts: (1) IPF's General Collection Procedure (General Collection Procedures); (2) West River's Collective Bargaining Agreement for Rapid City, South Dakota and Surrounding Areas with Local Union 1 Minnesota / North Dakota / South Dakota (Collective Bargaining Agreement); (3) IPF's Agreement and Declaration of Trust (Declaration of Trust); and (4) IPF's Rules and Regulations for the plan, particularly Section 9.05 (Withdrawal Liability Procedures).  *See* Compl. ¶ 10; Decl. Lester Kauffman ¶¶ 4–5.  In the event of a withdrawal, as here, ERISA also imposes certain obligations.  29 U.S.C. § 1383(a)–(b).

These provisions collectively obligate West River to pay a withdrawal liability for contributions incurred by withdrawing from IPF and continuing to do work in the jurisdiction that was covered by its collective bargaining agreement.  *Id.*; *see* Decl. Lester Kauffman ¶¶ 7–9.  The withdrawal liability is calculated based on West River's allocable share of the plan's unfunded vested benefits, subject to certain actuarial assumptions and methods.  29 U.S.C. §§ 1391(a)–(b), 1393(a)–(c).  Failure to comply with the agreements and obligations can trigger § 502 of ERISA, which directs courts to award (1) the amount of the unpaid withdrawal liability; (2) interest on that unpaid portion; (3) liquidated damages; and (4) attorney's fees and costs.  *See* 29 U.S.C. § 1451(b) (providing that a failure to fulfill a withdrawal liability obligation is treated the same as a

delinquent contribution), *id.* § 1145 (defining a delinquent contribution), *id.* § 1132(g) (providing that, if judgment is entered in favor of a benefit plan with respect to a delinquent contribution, the Court shall award unpaid contributions, interest at the rate set by the plan, liquidated damages, and reasonable attorney's fees and costs).

Because West River failed to pay its withdrawal liability, IPF seeks to recover damages owed under 29 U.S.C. §§ 1399(c)(5), 1132(g)(2), and 1451(b).   Compl. ¶¶ 6–7, 25–26; Pl.'s Default J. Mem. 1, 9, Dkt. 8-1.  In support of its motion for default judgment, IPF submitted (1) the declaration of Lester W. Kauffman III, the Executive Director of IPF, *see* Decl. Lester Kauffman, with copies of (a) the General Collection Procedures, *see id.* Ex. 1; (b) the Collective Bargaining Agreement, *see id.* Ex. 2; (c) the Declaration of Trust, *see id.* Ex. 3; (d) actuarial analysis of West River's withdrawal liability, *see id.* Ex. 4; (e) correspondence between IPF and West River regarding West River's delinquent payments, *see id.* Ex. 5–7, Ex. 9; (f) copies of certain of West River's checks providing partial payment of the withdrawal liability, *see id.* Ex. 8, Ex. 10; and (e) the Withdrawal Liability Procedures, *see id.* Ex. 11; and (2) the declaration of Dinah S. Leventhal, counsel for IPF, *see* Decl. Dinah Leventhal, Dkt. 8-3, including copies of attorney time sheets and invoices provided to IPF, *see id.* Ex. 1–3.

IPF's declarations and their accompanying exhibits set forth the computations of damages owed with "specificity." *Bricklayers & Trowel Trades Int'l Pension Fund v. Miami Valley Masonry, Inc.*, 288 F Supp. 3d 257, 260 (D.D.C. 2018).  Kauffman's declaration details the total withdrawal liability, *see* Decl. Lester Kauffman ¶ 24; interest, *see id*. ¶ 26; and liquidated damages, *see id*. at ¶ 27, with citations to and copies of supporting documents.  Leventhal's declaration details IPF's attorney's fees and costs in this case supported by additional exhibits.  *See* Decl. Dinah Leventhal ¶¶ 7–9.  In particular, the declarations and the entire record establish that West

River owes the following amounts totaling $1,061,775.49, in addition to interest on the unpaid withdrawal liability continuing to accrue at a rate of 15% per annum after July 5, 2025, through the date of payment:

- $839,312.39 for the unpaid balance of the withdrawal liability,[1] Pl.'s Default J. Mem. 1; *see* Decl. Lester Kauffman ¶ 24;

- $41,965.62 for interest at a rate of 15% per annum on the unpaid portion of the withdrawal liability assessed from March 5, 2025, through July 5, 2025,[2] in

---

[1] An actuary hired by IPF calculated West River's withdrawal liability as amounting to $867,846. Decl. Lester Kauffman Ex. 4, at 1–5. The Court finds the actuary's computation of the withdrawal liability reasonable because there is sufficient detail regarding the withdrawal liability owed. The computations include line-by-line calculations to demonstrate how the actuary calculated the total liability, *id.*, how it calculated the monthly payment, *id.* at 6, and a description of its methods and assumptions, *id.* at 8–10. *See also Fanning v. Seneca One Realty LLC*, 265 F. Supp. 3d 31, 34 (D.D.C. 2017) (describing relevant criteria for determining if an actuary's calculations of underpayments were "reasonable"). Moreover, IPF provided its withdrawal liability calculations to West River pursuant to ERISA, Decl. Lester Kauffman Ex. 5, at 1; *see* 29 U.S.C. §§ 1382, 1399(b)(1), and West River did not contest IPF's calculations.

West River provided seven installment payments of $4,076.23 toward the withdrawal liability before the instant suit, totaling $28,533.61. Decl. Lester Kauffman ¶ 24. "To simplify the calculation of the amounts owed and to fully credit West River Masonry for payments submitted towards the withdrawal liability, the IPF has chosen to apply the balance of the payments received to the withdrawal liability principal." *Id.* Under its payment schedule, IPF could have applied part of West River's monthly payments to interest owed and the remainder to the principal. *Id.* IPF's deviation decreases the total amount of damages that IPF could recover from West River—liquidated damages are applied to the principal owed, and IPF is decreasing the principal owed by more than it is obligated—so the Court will not scrutinize IPF's deviation. Thus, West River owes the $839,312.39 in unpaid withdrawal liability requested by IPF.

[2] The interest amount could be calculated at a rate of 15% per annum of the outstanding withdrawal liability from the due date of the first outstanding monthly payment, or February 6, 2024, per the parties' agreements. Decl. Lester Kauffman ¶¶ 11, 25–26; *id.* Ex. 11, at 2. But, similar to its calculations regarding the principal withdrawal liability, *see supra* n.1, IPF "simplif[ied] the calculation" of interest on the outstanding withdrawal liability by assessing it from the day following the last date on which West River Masonry could cure its installment payment delinquency pursuant to the notice provided by the IPF, which was March 5, 2025. Decl. Lester Kauffman ¶ 26. Because IPF is deflating its requested damages by at least a year's worth of accrued interest, the Court will not scrutinize its choice to deviate from its contractual terms. IPF

addition to 15% per annum interest continuing to accrue through the date of payment,[3] Decl. Lester Kauffman ¶ 26;

- $167,862.48 for liquidated damages,[4] *id.* ¶ 27; and

- $12,635 in reasonable attorney's fees and costs,[5] *see* Decl. Dinah Leventhal ¶ 10.

Therefore, pursuant to the agreements between the parties and ERISA, the Court concludes IPF is entitled to a monetary judgment of $1,061,775.49 and interest assessed at a rate of 15% per annum on the unpaid withdrawal liability after July 5, 2025, through the date of payment.

---

assessed interest on the outstanding withdrawal liability balance, or $839,312.39, *see supra* n.1. IPF's declaration calculates interest through July 5, 2025.  Decl. Lester Kauffman ¶ 26.  With an effective monthly interest rate of 1.25%, and four months of interest accrual on the outstanding withdrawal liability balance, accrued interest amounts to $10,491.40 a month, or $41,965.62 total.

[3] IPF also requests interest "continuing to accrue through the date of payment."  Mot. Default J. ¶ 3.   ERISA provides that "the [C]ourt shall award the plan . . . interest on the unpaid contributions" to be "determined by using the rate provided under the plan."   29 U.S.C. § 1132(g)(2).  IPF and West River's contractual terms provide that the 15% plan rate applies through the date of payment.  Decl. Lester Kauffman Ex. 11, at 2 (providing that, "[i]f the employer defaults . . . then the IPF will have the right to require immediate payment of all or a portion of the outstanding amount of the employer's withdrawal liability, *plus accrued interest thereon from the due date of the first payment which was not timely made*" (emphasis added)); *id.* Ex. 1, at 3 (setting the 15% interest rate "from the Due Date of each monthly payment").  The Court's judgment of interest damages to IPF includes interest on the unpaid withdrawal liability continuing to accrue at the plan rate after July 5, 2025, until West River's payment of its withdrawal liability.

[4] Liquidated damages represent 20% of the total unpaid withdrawal liability balance, which amounts to $839,312.39, *see supra* n.1.  The agreements between IPF and West River established the 20% liquidated damages rate.   Decl. Lester Kauffman Ex. 1, at 2; *see also* 29 U.S.C. § 1132(g)(2)(C)(ii) (allowing for "liquidated damages provided for under the plan in an amount not in excess of 20 percent").

[5] IPF's attorneys charged 33 hours on work for IPF regarding the instant suit, though IPF's declarant notes that the attorneys wrote off some of the hours expended.   Decl. Dinah Leventhal¶¶ 5, 6.  IPF's attorneys charged $355 per attorney hour billed through March 31, 2025, and $365 per attorney hour billed after April 1, 2025, rates that appear below market rate based on the *Laffey* matrix for attorneys of similar experience.  *Id.* ¶ 7.  Of the 33 hours charged, 16.7 hours were billed at the higher rate.  *See id.* at Ex. 1.  IPF incurred a filing fee of $405 and a service of process fee of $348.  *Id.* ¶¶ 8, 9; *id.* Ex. 2 (filing fee); *id.* Ex. 3 (service costs).  IPF's reasonable attorney's fees thus amount to $11,882, and costs amount to $753, for a total of $12,635.

8

## CONCLUSION

For the foregoing reasons, the Court will grant IPF's Motion for Default Judgment.  Dkt. 8.

A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

March 26, 2026

9